1
2
3
4
5
6            **UNITED STATES DISTRICT COURT**
7                 **DISTRICT OF NEVADA**
8

9  STEPHEN A. BLAISDELL,                    )
                                            )
10            Petitioner,                    )          3:08-cv-0094-LRH-VPC
                                            )
11  vs.                                     )
                                            )          ORDER
12  HOWARD SKOLNIK, *et al.*,                )
                                            )
13            Respondents.                   )
                                            )
14  _____)

15        This action proceeds on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, by

16  petitioner Stephen A. Blaisdell, a Nevada prisoner.  Before the Court is respondents' answer (docket

17  #33) and petitioner's reply (docket #38).

18  **I.        Procedural History**

19        Petitioner was charged on April 25, 1989, in the Second Judicial District Court for Washoe

20  County, with larceny from the person (count I), first degree kidnapping (count II), attempted robbery

21  (count III), four counts of sexual assault (counts IV, V, VI, and VII), and possession of a controlled

22  substance (count VIII).  Exhibit 3.[1]  On August 22, 1989, petitioner entered a guilty plea to count II,

23  first degree kidnapping, and count VI, sexual assault.  Exhibit 10.  The other pending counts were to

24  be dismissed.  *Id.*  The state district court canvassed petitioner with respect to the plea, and accepted

25  _____

26        [1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in
     support of their motion to dismiss the petition for writ of habeas corpus, and are located in the record
     at docket #17.

the guilty plea.  *Id.*  The state district court sentenced petitioner to eighteen years in prison for count II, and to life imprisonment with the possibility for parole for count VI, to run consecutively with count II.  Exhibit 12.  A judgment of conviction was entered on October 25, 1989.  Exhibit 13.

On October 9, 1996, petitioner filed a notice of appeal with the Nevada Supreme Court.  Exhibit 16.  The Nevada Supreme Court dismissed the appeal as untimely, and determined that petitioner's claim that he was not informed of his right to appeal would be properly raised in a habeas corpus petition.  Exhibit 18.  Remittitur issued on December 24, 1996.  Exhibit 20.  Petitioner filed a state habeas corpus petition on March 21, 2006, alleging that he was denied his constitutional rights when the state used a later amended version of NRS 213.108 to prevent his release on parole, in violation of the Ex Post Facto Clause.  Exhibit 22.  Essentially petitioner was challenging the change in the number of votes required to grant parole.  *Id.*  The state district court denied the petition.  Exhibit 35.

Petitioner appealed the lower court's denial, and the Nevada Supreme Court affirmed the state district court's denial, finding there was no ex post facto clause violation.  Exhibits 36 and 43.  Remittitur issued on July 17, 2007.  Exhibit 47.  Petitioner mailed a federal habeas corpus petition to this Court on February 14, 2008 (docket #7).  On respondents' motion to dismiss the petition (docket #16), the court found grounds two and three to be unexhausted.  Petitioner abandoned those claims for relief (docket #26), whereupon, respondents filed their answer to ground one and petitioner has filed a reply.

**II.  Discussion**

    **A.  Legal Standard**

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the standards of review  that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable

1    application of, clearly established Federal law, as determined by the Supreme Court
     of the United States; or

2

3            (2)  resulted in a decision that was based on an unreasonable determination of
     the facts in light of the evidence presented in the State court proceeding.

4    28 U.S.C. §2254(d).

5            A state court decision is contrary to clearly established Supreme Court precedent, within the

6    meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set

7    forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

8    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

9    different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166,

10   1173, 155 L.Ed.2d 144 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495,

11   146 L.Ed.2d 389 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d

12   914 (2002).

13           A state court decision is an unreasonable application of clearly established Supreme Court

14   precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct

15   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

16   principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174

17   (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495).  The "unreasonable application" clause requires

18   the state court decision to be more than incorrect or erroneous; the state court's application of clearly

19   established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409, 120 S.Ct.

20   1495).

21           In determining whether a state court decision is contrary to federal law, this Court looks to

22   the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

23   *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 122 S.Ct. 324 (2001)

24           With respect to pure questions of fact, "a determination of a factual issue made by a State

25   court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

26   presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).

3

1    **B**. **Ground One**

2         In ground one petitioner alleges that his constitutional rights were denied when the state used

3    an amended version of NRS 213.108 to prevent his release on parole, as opposed to using the

4    version of NRS 213.108 that was in effect at the time he was convicted.  The amendment increased

5    the number of Parole Board members from five to seven, requiring that petitioner obtain the

6    approval of four commissioners rather than three to obtain parole.

7         An *ex post facto* law is one that (1) punishes as a crime an act previously committed, which

8    was innocent when done, (2) makes more burdensome the punishment for a crime, after its

9    commission, or (3) deprives one charged with a crime of any defense available according to law at

10   the time when the act was committed.  *Collins v. Youngblood*  497 U.S. 37, 42  (1990) (citing

11   *Beasell v. Ohio,* 269 U.S. 167, 169-70 ((1925). Under the *Ex Post Facto* clause of the United States

12   Constitution, "[l]egislatures may not retroactively alter the definition of crimes or increase the

13   punishment for criminal acts." *Id.* However, mechanical or procedural changes to a statute that

14   produce a "remote risk of impact on the prisoner's expected term of confinement, do not present an

15   *ex post facto* violation.  *California Dep't of Corrections v. Morales,* 514 U.S. 499, 508 (1995).

16   Alternatively, however, if the procedural changes deprive a defendant of "substantial protections

17   with which the existing law surrounds the person accused of the crime" or arbitrarily infringes on

18   "substantial personal rights," those changes may be violative of the *ex post facto* clause.  *Morales,*

19   514 U.S. at 45 (internal citations omitted).

20        As the Nevada Supreme Court held, the change to the mechanics of the Board of Parole

21   Commissioners in adding two additional members, thereby requiring a potential parolee to obtain

22   the support of a majority of four, rather than three commissioners presents only a remote risk of

23   "producing a prohibited effect of increasing the measure of punishment."  *See* Exhibit 43, pp. 1-3

24   (citing *California Dep't of Corrections, supra.*).  Furthermore, as the court noted, because the

25   granting of parole is an act of grace by the state, within the discretion of the board,  rather than an

26   entitlement of the prisoner, any denial of parole, even by means of this mechanical change, does not

1   result in a constitutional violation.  *Id.*

2       The change to the make-up of the Nevada Parole Commission, which increases the number

3   of member from five to seven, does not deprive petitioner of a substantive right or materially

4   disadvantage his situation.  As respondents note, the increased number of board members, if

5   considered mathematically, actually decreases the percentage of members that petitioner must

6   persuade to obtain relief.[2]

7       Petitioner appears to argue that he was disadvantaged by the fact that, while he is required to

8   persuade four board members, only three members are required to appear in person.  And the votes

9   for and against granting him parole break down along the lines of who was present and who was not.

10   He suggests that an additional change in the law to increase the number of board members that are

11   required to appear in person might overcome the disadvantage he perceived at his hearing.  This

12   argument is, perhaps, logical to some extent, but does not persuade this court that the increase in the

13   membership of the Nevada Parole Commission caused an actual disadvantage to him in his sentence.

14   Rather, the disadvantage was speculative and without basis in fact.

15       Finally, it is important to remember that parole is not a guarantee, but an act of discretion

16   from the parole board.  *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979). Thus, petitioner

17   had no right to expect that he would gain parole at his hearing.  Petitioner has not shown that the

18   Nevada Supreme Court's decision on this claim for relief was contrary to or involved an

19   unreasonable application of clearly established federal law as determined by the United States

20   Supreme Court.  No relief is warranted from this court pursuant to 28 U.S.C. § 2254.

21   **C.      Certificate of Appealability**

22       In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

23   U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

24   (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

25   —————————————

26       [2]  This mathematical calculation is irrelevant, however, given the fact that it is impossible for
some percentage of an individual (the fourth member) to vote in favor and the remaining percentage to
vote against parole, as would be required to obtain a 57% vote identified by respondents.

petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition is **DENIED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. The Clerk shall enter judgment accordingly**.**

DATED this 12th day of August, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE